Wyndham Vacation Resorts, Inc. Good morning, Your Honor, and peace to the court. My name is Juan de Avila-Diaz. I'm the counsel for Ms. Carmen Planada, who is the plaintiff and appellant in this case. I would like to save three minutes for rebuttal purposes. In this case, the district court granted summary judgment on the discrimination and retaliation claims. We are here only to challenge the retaliation claim. The district failed to As a matter of fact, they don't mention the Burlington case on their decision. According to the Burlington case, the adverse employment action doesn't have to be related to the terms and conditions of the employment. The anti-retaliation provision doesn't have such limiting words. The key is the chilling effect of the objectable conduct on the protected activity. It is the objectable conduct should be harmful enough to persuade a reasonable worker from going forward with placing a charge or opposing an illegal conduct or just participating in any protected activity. And if we go over the timeline, you will see that this case meets the Burlington criteria. Ms. Carmen Planada, just a month and a half after she started working for Windham, came her first complaint. She complained directly to her supervisor, which was Shoni Mailey. She complained directly to the regional manager, which was Richard Wiesersack. She objected the way Mailey was treating her and two other female co-workers, Perez and Miles. After, this was in February and March 2011, as early as April 2011, two weeks after the last complaint, she was subject of a $4,000 charge back. No explanation whatsoever why she was subject to that. She tried to find out. She asked her supervisor. She asked corporate in Florida, and nobody would give her an explanation. The district court says that there's nothing in this record that would support an inference that the decision makers on that $4,000 knew anything about any oppositional participation activity that she had engaged in. Why is that conclusion wrong? Because of the temporal proximity, your honor. I mean, you can prove causation two ways. Either with direct evidence, that's what the district court refers to, or by indirect evidence in the form of temporal proximity. This was two weeks after her complaint. And they have no pretext. Two weeks after her complaint to whom? To her supervisor. And to the regional manager that was based on Florida. It's two weeks after, your honor. In the same month, April, same month, she participated in an investigation regarding sexual harassment claims by these other two co-workers, Perez and Mitchell. She participated in that. That's another protected activity. After that, she started being treated in a hostile manner, being yelled at by her supervisor, being threatened to be fired in front of everybody. She was called a liar. I mean, all of this came after her first two complaints. After that, she filed the EEOC charge, third protected activity. After that, the manager just wouldn't talk to her at all, wouldn't tell her her rotation. She couldn't even ask about her rotation at work after she filed the charge. And she was threatened to be fired again. You step it up, or you step out. If you don't like it, you leave. That's the way it is here. That's the way she was treated after these protected activities. Furthermore, when she filed her lawsuit, which she filed in June 2012, that very same month, June 2012, she was not allowed to participate in the owner's program. Same month she filed the lawsuit. June and July, no participation in the owner's program. The fact that she wasn't able to participate there had an effect on her employment because she wasn't able to, this was a chance to get more sales and to have a better volume per guest of sales. This is another example of the adverse employment action after a protected activity. In terms of what you have to show under Burlington, the treatment of your client, the retaliatory treatment, does it actually have to formally rise to the level of a hostile environment type of claim? Or is it enough to show that the way she was treated would be enough to deter or chill somebody from engaging in oppositional participation? That is correct, Your Honor. It's the latter? It's the latter. So you're not actually making a formal hostile environment claim as sort of the adverse consequences that she experienced. You're not making that argument, is that correct? That's correct. All of these things combined would have persuaded her, as Burlington, from going forward with the charge or participating in an investigation. It's the chilling effect that it would have on the protected activity. If she would have known, she even said that, Your Honor, I didn't go to HR to complain because I was afraid I was going to be fired. She knew it. She thought she knew it. And that chilling effect on the protected activity, my client complies with the Burlington test. And this was not even mentioned by the district court. It was not applied on the district court. And we believe they got it wrong because they didn't apply this. And this case fully complies with the Burlington test. Could you just, because there's a little confusion, I think, about some of the things that she experienced before she engaged in protected activity and things that happened to her afterwards. Could you just kind of itemize, summarize for us what she experienced after she engaged in protected activity that you say constitute retaliation? Yes, sir. $4,000 chargeback. This was two weeks after the first protected activity. No explanation given to her. The contract, the contract that where she sold that property that was subject of the $4,000 chargeback. Okay, what else, what else, please? Okay. She's starting to be harassed about her performance. She was yelled at in front of co-workers.  She's starting to be threatened to be fired. Step it up or step out. She would, the manager wouldn't talk to her. She could not ask about her rotations. She wasn't allowed to participate in the owner's program. All of these events combined can paint a picture, you know, for the fact finding of, fact finder of this case to find out that there was a chilling effect on the protected activity. And she would have been, if she would have known, she would have been persuaded not to do it. And the protected activity was what? First the complaints March, February and March, participating on an investigation, filing the EEOC charge, and filing the federal lawsuit. Okay, and then the people who, and could you just say something about the connection between, aside from temporal proximity, between the protected activity and the adverse employment actions, even if we looked at them collectively, that would enable one to say that there is a plausible linkage between the two, beyond just temporal proximity? In other words, who were the people who were engaging in the adverse employment actions towards her? And what would one, what evidence is there on the record that might lead one to think they were doing it because of her protected activity beyond the mere fact of the temporal proximity? These actions were by both of her supervisors and the original manager. Which actions? The charge back? No. I don't have direct evidence of that. That's why. That's what I'm trying to say. Could you say something about who is doing these adverse things to her? Windham. And how we could trace that back in any way that's plausible to the protected activities she engaged in. They were committed by Windham. I don't have direct evidence. That's why I used the temporal proximity that in a summary, you're trying to state. I mean, are the people engaged in this activity in positions that would lead one to plausibly think they would have known about the protected activity? Yes, sir. How so? Could you say more about that? After Richard Wiesersack was the original boss of South Florida and the Caribbean, and she complained directly to him. Directly to him. And after she complained, this came in. The $4,000 charge back came in. And what if he had to sign off on that? I don't have direct evidence of that. Who did sign off on it, on the charge back? She asked both of them, Shawnee Maley and Wiesersack, and nobody would give her any details. Any details. She doesn't have any details about it. Is there like a piece of paper that shows the charge back that's in the record? It is a piece of paper that shows. But it doesn't say any names. It comes from corporate. From corporate. And is the person that she directly complained to at corporate? No. No, sir. Is there nothing that came out in discovery on that issue? I'm sorry? Nothing came out in discovery as to how that happened? No. It was the only thing that came in discovery was that there was no explanation. Nobody would give her anything. Putting aside the charge back, the yelled at, who said step it up or step out? Supervisor, Shawnee Maley. Supervisor? That's right. And the other supervisor, Eugene Estes. Both supervisors. And had she complained, did the protective activity that she engaged in, was that something they would have been directly aware of? Oh, yes, sir. It was directly towards Shawnee Maley. He was the one accused of sexual harassment. It was directly to him. And when Eugene Estes came in, which is the second supervisor, this was after filing the EOC charge. They were very much aware of it. And what did the second supervisor do to her that was adverse? She wouldn't talk to her at all. She would threaten her to be fired if she didn't like it. She wouldn't allow her to go into the owner's program. After? After the protective activity? Yes, sir. This is after. Yes, sir. And why don't you consider that direct evidence? Do you? No. Well, because I don't have the smoking gun. She tell him, because you filed the EOC charge, I did this. That's why. But it's not just temporal proximity. The people to whom she complained and engaged in protective activity then did things that you claim were adverse to her, even though they don't say why they're doing the adverse thing. That's correct. Okay. Counsel, is it relevant at all if these facts are accurate that your client is still with Wyndham and has done well and has gotten awards? The record seems to indicate that. Is that accurate? Is it relevant? She's with Wyndham no more. She resigned. And these two awards that she received are given. One is automatic. I mean, they're claiming she wasn't performing. And the promotion she got from salesperson one to salesperson two was automatic because of time. The award that she received was given by the co-workers, not by Wyndham. Thank you. Thank you. May I please record? My name is Chiara Delonay and I'm appearing on behalf of defendant Appley at Wyndham Vacation Resorts. We want to sort of pick up where Brother Counsel just left and it's with respect to the adverse employment actions in this case and the causation of them to the alleged protected conduct. In this case pursuant to the brief, there are in essence three cases. Three alleged adverse employment actions. First of all, she claims that upon her return from a medical leave of absence, Mr. Maley sat down with her, had a meeting with her to tell her that her numbers were not good. She claims that after that meeting, she went to her desk and shortly thereafter, he went after her to her desk and started yelling at her in front of her co-workers and right there and then said, you either shape up or shape out. It's one single incident. It's not different incidents of the yelling and the meeting and the shaping or shape out. It's one single incident pursuant to her own deposition testimony. That's number one. As part of and it sort of is a retaliatory hostile work environment because she claims that that happened to her after she engaged in protected conduct by internal complaints and she also mentions that another co-worker, Mr. David Salicetti, told her that Maley had told him that he had said that the next person to be terminated would be plaintiff in this case. So we argue that that statement by Mr. Salicetti is an admissible hearsay. And at the most, it would be secondhand harassment because she did not learn directly from Mr. Maley. She learned it because another co-worker told her that he supposedly had said that. But the fact is that that one incident where she claims that he yelled at her and he told her to shape in or shape out, first of all, we believe that the district court correctly concluded that extreme supervision or harsh criticism is not enough to be a materially adverse employment action. These are cases that were held, concluded by this court after Burlington murder. Also in this case, and specifically with respect to the causal nexus, there is uncontested evidence on the record that she was not performing up to par. So there is a non-retaliatory reason behind his admonishment to her that she was not meeting her numbers. During her deposition, she was specifically asked how were her numbers, and she said they were not very good. So other than the brief reference to temporal proximity, the fact is in this case, other than the temporal proximity, they have absolutely no evidence to link the adverse employment actions with the protected conduct. What about the manager not talking to her? Well, that's one of the other adverse employment actions, which in this case in particular, Your Honor, the problem with that specific adverse employment action is twofold. First of all, Angela Estes, and it's not Eugene, it's Angela, it's a lady, she came to work at Wyndham a year after she engaged in protected conduct. She was not employed there at the hotel in Puerto Rico at the time that all of this was occurring with the other manager. She came a year later. And plaintiff in this case never amended her complaint in order to include additional instances of retaliation. She didn't exhaust administrative remedies before the Anti-Discrimination Unit, or the AOC, and she never requested leave from the court to amend the complaint to include any additional... Well, she's not making a new claim of retaliation. She's making a claim of retaliation of which she then, as the case would go forward, she would give more and more evidence of the retaliatory actions that create the environment that killed her. The problem, Your Honor, is that in the complaint in this case, she only made a passive reference to the fact that after she complained, she was retaliated. So, although we agree that there is case law that says that you can bring... if it's reasonably related to whatever she brought forth before... Well, we're beyond the sufficiency of the complaint. We're now at summary judgment, and I gather, as Judge Barron's indicating, more stuff comes out, and she's even entitled to some afterthoughts during the course of discovery about things that happened to her. You keep describing these acts that she complains of as discrete adverse employment actions. I mean, that's not, as I understand it, their theory. Their theory is that these different instances of harassment, as she would characterize them, when you put them all together, they amount to retaliatory conduct in the way that Burlington defines retaliatory conduct. Why do you keep referring to these as discrete adverse employment acts? That's not their theory, is it? Well, Your Honor, in their brief, they do mention them separately, and they didn't make an argument as to that they needed to be considered collectively, but it is our position that even if those are considered collectively, there is still, first of all, do not meet the threshold of materially adverse employment actions, but more importantly, even if we consider that they're materially adverse employment actions, there is no causal nexus because with this specific issue with the manager that came after, we do believe that she had a duty to amend the complaint. These were things that happened a year after all the allegations that were included in the complaint occurred. But even more importantly, even if we ignore the fact that she did not amend the complaint, there is evidence on the record that Angela Estes, that new sales manager, had absolutely no knowledge about her protected conduct. During her deposition, she was... Nothing that shows the manager was aware of her EOC filing? Correct. During the deposition, she was specifically asked what information Angela Estes has regarding your protected conduct, your filing of the federal complaint, or your administrative filings, and she said nothing, none. And as part of the motion for summary judgment, Angela Estes submitted a statement under penalty of perjury specifically saying, I have no knowledge. Before I was asked to complete this statement under penalty of perjury, I had no knowledge that this person had engaged in protected conduct. So even if we actually ignore the fact, and it's obviously in our brief, of whether or not it reaches the materially adverse threshold, the fact is that there is no causal nexus between whatever she claims Angela Estes was doing and her protected conduct because the alleged person making the retaliatory acts had no knowledge that she had engaged in protected conduct. The only two adverse employment actions that you concede were undertaken by people with knowledge of her protected activity are the you can call them two or one, the incident of the yelling and the shape in, shape out, because that was an adverse action undertaken by somebody who did have knowledge. But you then say it was too slight a thing to count as a true adverse action. Not only that, Your Honor, that's why I said that basically there are three. We have the ones that occur with the other manager which the position is that she had no knowledge that this was happening. There is the other one which is the $4,000 charge back. With respect to that one, the district court correctly concluded and that's the evidence on the record that an unidentified person from corporate offices canceled a contract that she had sold and resold it in the United States. There is no information that that unidentified person knew that she had engaged in any protected conduct. Not only that, but she was specifically asked what involvement Sean Maley, which is the other supervisor, had with respect to that charge back. Was he involved? Did he influence that charge back? And her position was that he had nothing to do with it. It's on the record, the specific citation to the deposition, where I was the one that took the deposition and asked her did he have anything to do with the charge back and her position was no. So, again, the charge back cannot be cautiously related to her protected conduct which at the time, that protected conduct had been her complaint to Maley himself and the complaint to Mr. Richard Wiesersack. What about the exclusion from the owner's sales for that two-month period? That, Your Honor, is part of what the new manager did. So our position is that those claims, the court will be barred from entertaining them to the extent that Angela Estes had no knowledge that she had engaged in protected conduct. The things that happened before which are related in any way to Mr. Maley are the charge back, which, again, the evidence establishes that he had no involvement with the charge back, that it was somewhere in corporate offices. And then the other thing that is only remaining is the yelling of the step up or step out. What was her explanation though for not allowing her to participate? For not allowing to what, I'm sorry, Your Honor? To participate in the owner's sales during that two-month period. Ms. Angela Estes was not deposed in this case, so there was no discovery as to the reasons why these things that plaintiff is alleging occurred. Her position was that that did not occur. But, again, the issue is that she had no knowledge, so whatever happened that is attributed to Ms. Angela Estes shouldn't be considered because she had no knowledge of the protected conduct. And then the other thing that we're talking in here is about the alleged comment of you better step up or step out and yelling about the numbers. Well, again, the position of Wyndham is there is non-retaliatory reasons for any such comments, which is the fact that she was not performing up to par and she admitted to it. What does the record show about negative things that were done to her vis-a-vis her employment prior to her engaging in the protected activity? Well, Your Honor, we believe that she did in this case originally had claims for hostile work environment based on race and national origin. No, no, no, I don't mean that. I mean, in other words, here is just this one narrative you could tell about this and I'm curious what your response to it is. Nothing, Wyndham doesn't seem to be doing anything very negative towards her other than the discriminatory comments by the various people there. But they're not imposing a charge back. They're not excluding her from ownership programs. They're not threatening her with being fired. She engages in protected activity. And all of a sudden, over the course of a year, she is subject to a charge back. She is excluded from an owner's program. They do say that it's shaping her ship out. If that's the record, you might think, well, at least it creates an inference since the supervisor knew she engaged in the protected activity that maybe something shifted in consequence of her activity. So, that would be less good of a story if actually before she engaged in the protected activity, they were also excluding her from ownership programs, imposing charge backs, or doing some equivalent other type things. Does the record show anything about that? No, Your Honor. There's no evidence on the record that prior to her complaining there was anything to that effect because the only person that she complains about those things is Ms. Angela Estes and that was a year after. But what should be clear in this case is we're talking different decision makers in here. The issue with Mr. Maley is the issue of the performance and whether or not he yelled at her. And again, it happened once. And the issue of the charge back cannot be omitted on the record that he had nothing to do with the charge back. And then the other set, that's why I sort of was dividing them, the third set of issues is related to Ms. Estes and Ms. Estes already mentioned that she had no knowledge about this and there is not there's not an issue of fact in this case that she knew. Pursuant, this court has repeatedly held that the person that is doing the retaliatory ask has to have prior knowledge that this person indeed engaged in protected conduct. So those retaliatory acts that allegedly Estes did cannot be considered retaliation because she had no idea that she had engaged in protected conduct. So what we're left with is the alleged hostile work environment. And I do believe your honor that this court in the case of Gomez versus Potter specifically held that yes it has to be established that it amounts to hostile work environment and if we're talking about one incident where I met with you and I told her shape up or shape out and I yell at you, it's one single incident we do not believe that even adding that and the unidentified person that canceled and did the charge back, together it's not severe and pervasive. Not to mention in this case and it's on the record that that indeed the person that told her about the charge back told her you're going to get your money back and she indeed got the money back. Thank you. Angela Estes was in the office at the moment the lawsuit was filed. She knew about it. The server went there to her office and served in that office that she manages in Pajardo. So she knew about it. After that came The record shows that the lawsuit was filed in the office Not filed, but served. Yes sir. The record shows that. It's not on the record, but I have the summons. It's not on the appeal record but on the reward of purposes it was in there that there were summons. And before she engaged in any protected activity, there was nothing against her. No comments, no yelling, no nothing. It was after the protected activity that happened. The fact that she didn't amend the pleadings well, at the summary judgment state, all of those facts were duly supported in our statement of additional facts. They were there for the court's consideration. So we have the chance to amend our pleadings even in the pretrial or at the jury trial. So they were there for the consideration of the court. Actually the Cathy Rodriguez case which was decided by this court in February states that the plaintiff doesn't need to specify each and every detail and each and every incident at that stage. We still believe that we comply with the Burlington chilling effect on the protected activity and that's why we think District Court got it wrong. Thank you.